[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11247

_____

D. C. Docket No. 01-00301-CV-J-HTS

ROYAL SURPLUS LINES INSURANCE COMPANY,

Plaintiff
Counter-Defendant
Cross-Appellee
Appellant,

versus

COACHMAN INDUSTRIES, INC.,
GEORGIE BOY MANUFACTURING,

Defendants
Counter-Claimants
Third-Party Plaintiffs
Cross-Appellants
Appellees,

GAB ROBINS NORTH AMERICA, INC.,
f.k.a. GAB Business Services, Inc.,
GEORGIA BOY PROJECTS, INC.,

Defendants
Counter-Claimants
Appellees.

Appeals from the United States District Court
for the Middle District of Florida

———————————————————

**(June 19, 2006)**

Before EDMONDSON Chief Judge, ANDERSON and FAY, Circuit Judges.

PER CURIAM:

This appeal involves the effort by an insurance carrier to collect monies from its insured that it paid to settle claims of third parties brought against the insured. The gravamen of this suit was that the insured had withheld critical information from the insurance carrier and as a result, the settlement payout was many times what it could have been had the information been transmitted in a timely fashion. The insureds counter-claimed, alleging bad faith on the part of the insurance carrier, and sought reimbursement for the expenses in defending the claims. The district court addressed each of the multiple claims and issues, entered numerous orders, and ultimately ruled in favor of the insureds as to the claims by the insurance carrier. The district court ruled in favor of the insurance carrier on the counterclaim. We affirm.

I. Procedural History

This case has a tortured procedural history that involves extensive litigation. On March 15, 2001, Appellant, Royal Surplus Lines Insurance Company ("Royal"), filed its first complaint in this matter, seeking to recover monies it had paid in settling a claim instituted by Joyce Haan and the Estate of Earl Haan. Royal's original complaint alleged causes of action for breach of contract and breach of the covenant of good faith and fair dealing. Appellees, Coachmen Industries ("COACHMEN"), Gab Robins North America ("GAB"), Georgie Boy Manufacturing ("GBM") and Georgie Boy Projects ("GBP), hereafter referred to collectively as "appellees," moved to dismiss the complaint. The trial court granted this motion on June 25, 2001, and dismissed the complaint without prejudice.

On July 13, 2001, Royal filed an amended complaint alleging breach of contract, breach of fiduciary duty and negligence. On October 15, 2001, appellees filed a counterclaim against Royal alleging four counts; (I) abuse of process, (II) breach of contract, (III) breach of fiduciary duty/bad faith, and (IV) breach of covenant of good faith and fair dealing. Royal moved to dismiss counts I, II and IV of the counterclaim. On January 1, 2002, the appellees filed a motion for summary judgment. In support of this motion, appellees asserted the following: (1) Royal waived any and all coverage defenses by voluntarily paying the Haan

3

settlement, (2) Royal was not a third party beneficiary of the COACHMEN-GAB contract, (3) GBP is a predecessor in interest of GBM and cannot be sued in its own right, and (4) the counts for negligence and breach of fiduciary duty are barred by the economic loss doctrine. On April 11, 2002, Royal filed a motion to amend the amended complaint and add a count for misrepresentation.

On April 12, 2002, Royal filed two additional motions: (1) a motion for summary judgment asserting that it did not waive any coverage defense respecting the Haan settlement, and (2) a motion for partial summary judgment asserting that the undisputed facts establish that COACHMEN and GBM negligently misrepresented material facts regarding important aspects of the Haan lawsuit.

On September 17, 2002, the district court issued a series of four orders addressing these outstanding motions. First, the court denied Royal's motion for summary judgment and motion for partial summary judgment. Second, appellees' motion for summary judgment was granted as follows: (1) all claims asserted against GBP in the amended complaint were summarily adjudicated in GBP's favor, (2) summary judgment was granted in favor of GAB as to all claims except the allegation relating to failure to give notice as set forth in Royals' negligence count, and (3) summary judgment was granted in favor of COACHMEN and GBM as to negligence and breach of fiduciary duty based on the economic loss rule. The

4

court reserved ruling on appellees' motion for summary judgment concerning breach of contract. Finally, the trial court denied Royal's motion to amend the amended complaint.

Subsequently, on December 27, 2002, the appellees filed a third-party complaint adding Kennard Weaver and his law firm as third-party defendants. On June 2, 2004, the trial court set a motion deadline for August 6, 2004 and set the matter for jury trial commencing February 7, 2005. Pursuant to this order, each party filed additional motions for summary judgment. Royal's motion for summary judgment asserted as undisputed facts that GBM and COACHMEN breached their insurance contract by concealing facts material to the Haan case. The appellees' motion for summary judgment asserted that Royal waived its right to contest coverage by failing to assert a "reservation of rights." On November 12, 2004, the trial court issued another order addressing these motions. The court granted the appellees' motion for summary judgment on the breach of contract claim. On November 30, 2004, Royal moved for reconsideration of this order. This was denied. In January 2005, the court dismissed appellees' counterclaim. Final judgment was entered in this matter on February 3, 2005. This appeal followed.


## II. Factual Background

5

## The Insurance Policies issued by Royal

Royal issued two insurance policies on May 5, 1995. The policies provided coverage from May 1, 1995, until May 1, 1996. Both COACHMEN and GBM were named insureds under the policies. The first policy was a commercial general liability policy (primary policy) for the amount of two million dollars, with a self-insured retention ("SIR") amount of $500,000 for products liability claims. The second policy was an umbrella policy for the amount of five million dollars. There was an intermediate policy issued by St. Paul Surplus Lines Insurance Company in the amount of five million dollars. The SIR provision in the primary policy gave COACHMEN the ability to control the defense of any action within the SIR amount. The contract further provided that Royal had the right to assume the defense in any action that could exceed the SIR amount. The amount of the SIR included any costs incurred by the insured in defending or investigating the claim. As a result, COACHMEN contracted with GAB to administer and monitor claims filed against it. GAB is a third-party administrator, and it contracts with various companies, which include both insureds with SIR provisions and insurers to handle claims.

## Haan Accident

On March 4, 1996, a tragic accident occurred involving a motor home manufactured by GBM, a recently acquired COACHMEN subsidiary. The motor home in question was built on a chassis purchased from the Chrysler Corporation ("Chrysler"). Joyce and Earl Haan were traveling in their 1978 Swinger motor home on Interstate 95 in Jacksonville, Florida, when a strap holding the gas tank failed. The gas tank fell to the pavement, was punctured, and the fuel contained therein ignited, causing an explosion and a fire. The explosion and subsequent fire caused the death of Earl Haan and severely injured Joyce Haan when she had to jump from the burning motor home.

Shortly after the accident, GBM retained Kennard R. Weaver, a lawyer, to handle the Haan claim. On March 13, 1996, Mr. Weaver wrote a letter notifying GAB of the potential loss due to the Haan accident. On April 30, 1996, Mr. Weaver spoke with Richard Bowers, in-house counsel for COACHMEN. Mr. Weaver expressed his opinion that he believed the Haan accident was like Robichaux, a Louisiana case which dealt with similar facts.

The Robichaux accident

In 1985 and 1986 Chrysler and GBM were involved in a similar products liability case, Robichaux, in which straps that held the gas tank on a chassis

manufactured by Chrysler failed, causing at least one death. Mr. Weaver represented GBM during that time period. In addition, on May 23, 1986, Richard Naj, Senior Staff Counsel for Chrysler, wrote Virl Thompson, President of GBM, a letter in which he warned GBM that moving the gas tanks created a potentially dangerous condition. A copy was sent to Mr. Weaver in 1986. In the instant case, Mr. Weaver directed that all of GBM's files which dealt with Robichaux and the Naj letter, to be delivered to him. Apparently, he did not disclose the relevance of Robichaux or the existence of the Naj letter to anybody at COACHMEN.

Haan Litigation

On July 9, 1997, Joyce Haan, individually and on behalf of her husband's estate, sued COACHMEN and Chrysler. Eventually, GBM and GBP were added as defendants. The First Amended Complaint alleged that the plaintiffs incurred damages as a result of a defect in the motor home and averred COACHMEN, GBM, GBP, and Chrysler acted negligently. Once the *Haan* lawsuit was filed, COACHMEN took over the defense and hired Rumberger, Kirk and Caldwell, P.A. ("RKC") to represent its interests in the Haan litigation. Royal was notified of the claim by a letter dated October 10, 1997. After it was notified of the suit, Royal chose not to take an active role in the defense, but instead decided to

8

monitor the litigation closely and allow the insureds to provide the defense in accordance with the SIR. Royal requested that it be kept informed of any information that developed through the investigation and discovery in the case. Royal notified RKC that it wanted copies of all correspondence sent to COACHMEN. In response to this request, COACHMEN instructed RKC to copy and send all documents involved in the Haan case to Royal.

In a letter dated August 5, 1998, RKC notified Royal of Chrysler's claim that GBM had moved the gas tank from its original position as manufactured and that this is what caused the strap to fail on the Haan motor home. At that time, however, RKC did not have any additional information beyond Chrysler's allegations. The initial letter placing the carriers on notice stated that the claims could have serious damage potential. COACHMEN's initial offer to the plaintiffs was for $500,000, and RKC opined that the claims would likely not require a large payout from the primary policy.

A mediation conference was held on October 1, 1998. In advance of the mediation, RKC received information from Mr. Bowers that GBM may have moved the fuel tank from its original position as manufactured by Chrysler. Immediately following the October 1998 mediation, the lawsuit could have been settled for approximately two million dollars. Indeed, the plaintiffs made a formal

offer of judgment for two million dollars shortly after the unsuccessful mediation.

On November 11, 1998, Mikal Watts was retained as co-counsel for the plaintiffs. Once Mr. Watts entered the case, the opportunity to settle for two million dollars closed. On December 17, 1998, Mr. Watts sent a letter to RKC, which effectively revoked the previous offer to settle the case. The plaintiffs now demanded twelve million dollars.

On December 11, 1998, RKC informed COACHMEN that GBM had, in fact, moved the gas tank on the chassis of the Haans' motor home. In a letter from RKC to COACHMEN, dated December 22, 1998, it was disclosed, seemingly for the first time, that Chrysler may have warned GBM not to move the fuel tank.[1] Prior to this time, RKC expressed the opinion that Chrysler's defense that GBM had moved the gas tank, resulting in the strap failure, would be difficult to maintain. Obviously, that opinion changed. In January 1999, COACHMEN directed RKC to accept the October 1998 offer of settlement for two million dollars. This was impossible, however, since the offer had been withdrawn in December 1998.

Subsequently, on February 18, 1999, RKC provided a copy of the 1986 Naj

---

[1]Under the procedures being followed, RKC would have sent copies of these letters to Royal.

letter[2] to Mr. Richard Strom, corporate representative for Royal. Royal was told that the letter was recently discovered in the files of Mr. Weaver, GBM's previous counsel. Thereafter, Royal became actively involved in attempting a settlement. On March 1, 1999, Royal made an offer to Mr. Watts to settle the Haan claims for an amount that would require payment out of both the primary and excess policies.

Ultimately, Royal settled the Haan case on April 16, 1999, for an amount that greatly exceeded the offer tendered after the October 1998 mediation. Prior to completing the settlement, Royal did not deny coverage, assert a defense to coverage, or reserve its rights. The amount of the settlement caused Royal to pay the entire primary policy and a portion of its excess policy.[3]

_____

[2] On May 23, 1986, Richard Naj, senior staff counsel for Chrysler, sent a letter to Virl Thompson of GBM. Chrysler had conducted an independent investigation on the recent motor home problems, and determined that moving the gas tank on Swinger motor homes created a potentially dangerous condition. The Naj letter reads in pertinent part:

> As a result of the Robichaux lawsuit Chrysler has conducted an independent investigation of the involved accident vehicle and other similar motor homes. Specifically, we have examined four other Swinger motor homes . . . . Two were manufactured in 1977, one in 1978, and one in 1979. The 1978 vehicle is identical to the Robichaux motor home. . . . In each instance we found that Georgie-Boy (GBM) had substantially modified the rear fuel system. The fuel tanks were moved forward and the cross-supports were found to be modified from the original position. We believe that the re-design of the fuel tank attachment system creates a potentially dangerous condition which could compromise the integrity of the fuel system. . . . We believe that there is sufficient evidence to determine that a situation exists which creates a potential problem transcending the Robichaux litigation and that Georgie-Boy (GBM) should notify the owners of its vehicles of this potential problem. . . .

[3] The settlement also included funds from St. Paul.

Consent to Magistrate Judge

Pursuant to the provisions of Title 28 U.S.C. 636(c)(1) and Fed.R.Civ.P. 73, the parties consented to the United States Magistrate Judge conducting all proceedings in this case to final judgment.

## III. Issues

The appellant, Royal, raises the following issues on appeal:

1. Did the trial court err by granting summary judgment against Royal regarding the issue of breach of contract.

2. Did the trial court err in concluding that Royal's burden of proof to establish breach of the cooperation clause was to demonstrate that appellees deliberately concealed information about the Haan accident and the prior Robichaux case.

3. Did the trial court err in concluding that the Economic Loss Rule precluded Royal from pursuing tort claims against the appellees.

In addition, the appellee, COACHMEN, cross appeals the dismissal of its counterclaim.

## IV. Standard of Review

12

We review rulings on motions for summary judgment *de novo* by applying the same legal standards used by the district court. See Granite State Outdoor Adver., Inc. v. City of St. Petersburg, 348 F.3d 1278, 1281 (11th Cir. 2003). The same holds true for rulings on questions of law. See Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993).

Summary Judgment Standard

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings . . . which it believes demonstrate the absence of a genuine issue of material fact." Catrett, 477 U.S. at 323. If the moving party succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-moving party to establish that a genuine issue of fact material to the non-movant's case exists. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993). After the non-moving party has responded to the

13

motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

## V. Breach of Contract

The trial court granted summary judgment in favor of the appellees on the breach of contract claim, finding that Royal waived its rights when it voluntarily paid the settlement funds without reserving its right to deny coverage. Royal argues that the trial court erred in granting summary judgment because: (1) it weighed inconsistent testimony of Mr. Richard Strom, and (2) at the time of the settlement, Royal did not know enough to issue a reservation of rights letter. We find these arguments to be without merit.

Waiver is defined as "the intentional or voluntary relinquishment of a known right, or conduct which implies the relinquishment of a known right." See State Farm Mut. Auto. Ins. Co. v. Yenke, 804 So.2d 429, 432 (Fla. Dist. Ct. App. 2001). A reservation of rights is warranted where an insurer "knew or should have known" the potential for a defense to coverage. See Fla. Stat. § 627.426(2) (2005).

14

The appellees contend that Royal should have reserved its rights because it knew or should have known the potential for a defense to coverage. Appellees argue that Royal was aware of both the Robichaux case and the Naj letter before it decided to settle the Haan claims and that it was also aware of how the information was disclosed and that it had been in the possession of the insureds from the outset. Thus, Royal should have reserved its rights as required by the Florida statute.[4] Failing to do so, it has waived any claim for reimbursement.

The thrust of the claim being made by Royal is that the insured appellees failed to provide Royal with the details of the Robichaux litigation and with a copy of the Naj letter in a timely fashion, resulting in a substantially higher payout in settlement. The question before us is whether the record supports the ruling of the trial court that Royal knew all of the relevant information about these matters prior to the settlement, thus requiring it to issue a reservation of rights.

After examining the record, we conclude the following: (1) the failure to disclose in a timely manner information about the Robichaux case and the Naj

---

[4] A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery. Fla. Stat. 627.426(2)(a) (2005).

letter probably resulted in a substantial increase in the sums required to settle the Haan claims, (2) Royal was aware that this material had been in the possession of its insureds and had not been produced in a timely manner when it concluded settlement of the Haan claims, and (3) knowing this, Royal was obligated to reserve its rights and failure to do so amounts to a waiver of this claim.

On July 7, 2004, Richard Strom's deposition was videotaped. During this deposition, he confirmed that Royal knew the details of the <u>Robichaux</u> case and had a copy of the Naj letter well before settlement of the Haan claims. He knew that this material had been in the possession of the insureds and not produced prior to the mediation. He also confirmed that had Royal known of the contents of this material, the Haan claims could have been settled for a much reduced sum.

Quoting from the deposition:

Q:   But as you testified earlier, you can't – you don't have any information or evidence to establish that anything was intentionally concealed from Royal at any point in time by any defendant; is that true?

A:   Well, you know, there's – there's information that came out that suggests, and if there's suggestion, then there's – there's a reason to reserve, it's not denying coverage, it's reserving your rights to deny coverage.

Q:   What is that information that suggests that?

A:   Well, I mean, the revelation of the Naj letter and the

16

information that came belatedly on the <u>Robichaux</u> matter.

Q:    But you knew all of that information before the case had settled, correct?

A:    That's correct.

Richard Strom, Deposition 92 at 3-19.

In addition to this testimony, all of this is also confirmed in a detailed interoffice memorandum authored by Strom and sent to Bob Mooney on February 24, 1999. <u>See</u> Exhibit 52. The memo contains a detailed discussion of the problem created by GBM in moving the gas tanks from the location selected by Chrysler and the warning given by Chrysler in the Naj letter. The memorandum discusses in detail how the revelation of this information has increased the value of the Haan claims. <u>Id.</u> There is simply no question that Royal knew at that time that the failure of the insureds to produce this information prior to the mediation had increased its exposure dramatically.

Under these circumstances, there is no genuine issue of fact pertaining to whether Royal could have and should have issued a reservation of rights.[5] Royal's assertions that it did not have enough information to reserve its rights is totally refuted by the sworn testimony of its corporate representative. In addition, the

---

[5] Interestingly, St. Paul Surplus Insurance Company did reserve its rights to deny coverage.

record undeniably demonstrates that Royal "knew or should have known" about the possible coverage defenses, to the extent necessary for asserting a reservation of rights. In light of the foregoing, we find that Royal waived its rights when it voluntarily paid the settlement funds without first reserving its right to deny coverage in accordance with the Florida statute.

## VI. Burden of Proof

The trial court determined that Royal's burden of proof to establish breach of the cooperation clause was to demonstrate that appellees deliberately concealed information from it and that this fact was not learned until after the Haan settlement.

Royal alleges that the appellees breached the cooperation clause when they failed to notify Royal of material information in a timely manner as discussed above. Furthermore, Royal contends that the trial court erred when it determined that Royal's burden to establish such a breach was to demonstrate that appellees deliberately or intentionally concealed information. We conclude that the trial court was correct in articulating the elements of the claim being made.

In granting summary judgment, the court merely defined the burden necessary in order for Royal to establish that the appellees breached their duty to cooperate. Failing to cooperate encompasses the action of intentionally or willfully

18

concealing information from the insurer. Mere negligence is not sufficient. Willful intent is inherently part of the term concealment. See New York City Hous. Auth. v. Hous. Auth. Risk Retention Group, Inc., 203 F.3d 145, 151 (2nd Cir. 2000) (holding that in order to disclaim coverage on the ground of an insured's lack of cooperation, the carrier must demonstrate that the attitude of the insured, after his cooperation was sought, was one of willful and avowed obstruction). In addition, Black's Law Dictionary defines concealment as: "The insured's intentional withholding from the insurer material facts that increase the insurer's risk and that in good faith ought to be disclosed." Black's Law Dictionary 282 (7th ed. 1999). The trial court determined that when addressing a breach of duty to cooperate claim, an insured cannot breach the cooperation clause by negligently failing to produce information. Royal had to prove intentional concealment. We agree.


## VII. Economic Loss Rule

Lastly, Royal argues that the trial court was erroneous when it concluded that the economic loss rule precluded it from pursuing tort actions for negligence, breach of fiduciary duty, fraud, deceit and misrepresentation.  Royal seeks recovery of an economic loss measured by the difference between the $2 million settlement offer, which would have been accepted had COACHMEN and GBM

19

shared information in a timely manner, and the $9,875,000 ultimately paid to settle the Haan claims.

Pursuant to Florida law, the economic loss rule provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." See Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994) (citations and quotations omitted) see also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996) (holding that in order for an independent tort to be sufficient to survive the economic loss rule, it "requires proof of facts separate and distinct from the breach of contract). This rule is based upon the doctrine that "contractual principles are more appropriate than tort principles for resolving economic loss claims." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 901 (Fla. 1987).

Royal cites Indem. Ins. Co. of North America v. American Aviation, Inc., 891 So.2d 532 (Fla. 2004) for the proposition that tort recovery is permitted where the tort is committed independently of the breach of contract. However, in Indem. Ins. Co., the Florida Supreme Court made it clear that the economic loss rule does apply "where the parties are in contractual privity and one seeks to recover damages in tort for matters arising from the contract." Id. at 536.

The trial court correctly held that Royal's tort claims were based on the

allegation that appellees concealed damaging information from it, the same information that provided the basis for the breach of contract claim. These parties were in a contractual relationship. Their obligations to each other arose from the insurance contracts. Thus, any tort claims are barred by the economic loss rule.

## VIII. Bad Faith Counterclaim

The trial court dismissed COACHMEN's bad-faith counterclaim against Royal for failing to state a cause of action for which relief can be granted. We agree. The entire thrust of the counterclaim is that Royal should not have brought this suit. The allegations are not framed as ones for malicious prosecution.[6] Rather, it appears that COACHMEN seeks damages for defending this suit. COACHMEN has not cited, and we have not uncovered, any authority for such a claim. The dismissal was proper.

## IX. Conclusion

After reviewing the record we conclude the following: (1) Royal waived its rights to bring these claims when it voluntarily paid the settlement without first

---

[6] Malicious prosecution actions require a preceding judgment.

21

reserving its rights in accordance with the Florida statute, (2) the trial court was correct in its determination as to Royal's burden of proof, and (3) Royal's tort claims were barred by the economic loss rule. With regard to the counterclaim, there is simply no legal basis.

**AFFIRMED**.