A89A0536. DRONZEK v. VAUGHN et al.
(382 SE2d 188)

BANKE, Presiding Judge.

The appellant, Walt Dronzek, began working for appellee Vaughn-Parker Brokerage, Inc., in July of 1978. The company is engaged in the produce distribution business and is owned by appellee Nehl Vaughn. At the time Dronzek began working for the company, it was understood that he would initially receive corporate stock in lieu of money as compensation for his services. Dronzek worked under this arrangement until 1980, when he began receiving a salary for his services. Although Dronzek never did receive any stock, Vaughn testified that he reached an understanding with Dronzek in 1980 that the latter had earned a 20-percent equity in the company through his past contribution of services. Dronzek maintains that he was to continue to receive equity in the company each year until his total interest

eventually reached 40 percent. Vaughn denies this; however, both men agree that it was understood that a buy-sell agreement would be executed at some time in the future, enabling either of them to purchase the shares of the other in the event the other decided to leave the business. Although discussions regarding such an agreement continued to occur from time to time after 1980, none was ever executed.

In February of 1987, a falling out occurred between the two men after Vaughn discovered that Dronzek had compiled a file in contemplation of soliciting the company's clients in the event he decided to go into business for himself. At this time, Vaughn sought and obtained Dronzek's signature on an agreement, drafted in the form of a memorandum to Dronzek from the corporation, providing in pertinent part as follows: "We recognize your past efforts have contributed to the growth of our Company, but also realize your interests are no longer directed to continued growth of Vaughn-Parker Brokerage, Inc. We offer the following in order to repay you for your past efforts: $30,576—payable without interest at the rate of $637.00 per month, over 48 months. . . . However, we must also protect our Company during the payout period. Should you, directly or indirectly, attempt to solicit any of our principals or customer accounts during the payout period, the above agreement becomes null and void and all payments will cease, immediately. . . . We, the undersigned agree to the above offer and will be bound by its contents. The above offer shall constitute payment of any and all obligations, whatsoever, of Vaughn-Parker Brokerage, Inc. to Walter S. Dronzek." This document was signed by Vaughn, in his capacity as president of the corporation, as well as by Dronzek. The parties appear to be in agreement that the $30,576 payout figure specified in the document represented approximately 20 percent of the worth of the business at that time.

Dronzek admits that he began soliciting the corporation's principals, or clients, within three to four days after signing the agreement. Because of his conduct in this regard, none of the payments contemplated by the agreement were ever made to him. He brought the present action against both Vaughn and the corporation seeking to recover damages based on Vaughn's alleged oral promises to give him a 40-percent equity interest in the business and to execute a buy-sell agreement. The trial court granted summary judgment to the appellees, and Dronzek filed this appeal. *Held*:

1. Dronzek contends that the severance agreement constituted an overbroad and therefore unenforceable covenant not to compete. We disagree. The agreement did not purport to obligate Dronzek to refrain from competing with the appellees. Rather, it obligated the appellee corporation to pay him a specified amount of money in the event he chose not to engage in such competition. Such an agreement

cannot be equated with a restrictive covenant executed in connection with an employment contract purporting to prohibit the employee from competing with the employer following the termination of the employment relationship. Compare *Guffey v. Shelnut & Assoc.*, 247 Ga. 667 (278 SE2d 371) (1981); *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (236 SE2d 265) (1977); *Owens v. RMA Sales*, 183 Ga. App. 340 (1) (358 SE2d 897) (1987).

2. " 'Compromise may be defined as any agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated.' (Cit.) In order to render valid the compromise of a claim, it is not essential that the matter should be really in doubt. It is sufficient if the parties consider it so far doubtful as to make it the subject of a compromise." *Fulford v. Fulford*, 225 Ga. 9, 16 (165 SE2d 848) (1969). Accord *Hall v. Beavers*, 78 Ga. App. 722 (1) (51 SE2d 879) (1949).

The trial court was authorized to conclude as a matter of law that the severance agreement signed by Dronzek and the corporation constituted a binding and enforceable compromise of all claims Dronzek may have had against the corporation at the time he signed it.

3. Any breach of contract claims which Dronzek may have had against Vaughn based on the latter's failure to honor his alleged promises to give Dronzek a 40-percent interest in the corporation and to execute a buy-sell agreement were barred by the four-year limitation period applicable to actions on oral contracts. See generally OCGA § 9-3-25.

4. The evidence of record conclusively negates Dronzek's claim that Vaughn defrauded him by failing to execute the promised buy-sell agreement.

"The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. (Cit.) Nor does actionable fraud result from a mere failure to perform promises made. (Cit.) 'Otherwise any breach of a contract would amount to fraud.' (Cit.)" *Lively v. Garnick*, 160 Ga. App. 591, 595 (3) (287 SE2d 553) (1981). An exception to the general rule is, however, recognized in the case of "a promise as to future events made with a present intention not to perform (cit.) or where the promisor knows that the future event will not take place. (Cit.)" Id. at 596.

Dronzek's allegation that Vaughn never intended to comply with his promise to execute a buy-sell agreement was denied under oath by Vaughn, who averred in an affidavit submitted in support of his summary judgment motion that although no buy-sell agreement was ever prepared and executed, he did intend "to go through with it" at the time he agreed to do so. In his deposition, Dronzek seemed to confirm Vaughn's expression of good faith in this regard, testifying as follows upon being asked to state the reasons for his allegation that Vaughn

never intended to live up to the stock agreement: "Oh no. I never didn't (sic) believe that, and I don't, to this day, believe that point." Under the circumstances, we conclude that Vaughn met his burden on motion for summary judgment of negating this allegation of fraud.

5. Dronzek further contends that a material issue of fact remains as to whether Vaughn defrauded him by appropriating to his personal use certain corporate income which he (Dronzek) would otherwise have received as salary. Vaughn also denied this allegation under oath, and the only support Dronzek offered for it was his assertion, made during his deposition, that Vaughn and Vaughn's wife "had pretty old cars" when he first came to work for the company, but that, in subsequent years, "new cars were being bought on a reasonably regular basis" for both of them. Vaughn responded to this suggestion of impropriety by disclosing the company's automobile expenses during the years in question; and the record provides no basis for an inference that these were other than legitimate business expenses. Under the circumstances, we hold that the record also established Vaughn's entitlement to summary judgment with regard to this claim.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED MAY 5, 1989.

*Northcutt, Edwards, Gainer & Moore, William G. Gainer, Mark V. Clark*, for appellant.

*The Counsel House, Robert W. Raliegh, James D. McGuire*, for appellees.