A91A1512. DCA ARCHITECTS, INC. v. AMERICAN BUILDING
CONSULTANTS, INC. et al.
(417 SE2d 386)

POPE, Judge.

Defendant/appellee American Building Consultants, Inc. (hereinafter referred to as "ABC") is a construction company specializing in churches and church-related projects. At all times relevant to this action, co-defendant/appellee A. Milton Riviere (hereinafter referred to as "Riviere") was president and majority shareholder of ABC. Plaintiff/appellant DCA Architects, Inc. (hereinafter referred to as "DCA") is a professional corporation incorporated in November of 1988, which is owned by Thomas Diehl (hereinafter referred to as "Diehl") and Mark B. Carroll (hereinafter referred to as "Carroll"), both of whom are registered architects. Prior to the formation of DCA, Diehl worked for ABC and its predecessor corporation for more than 13 years as an architect, and Carroll worked for ABC for several years as an independent architect consultant.

One of the projects ABC was working on in 1987 was a new campus for an orphanage known as Hephzibah Children's Home (hereinafter referred to as "Hephzibah") located near Macon, Georgia. ABC's work on the Hephzibah project continued on into and through 1988. In mid-1988, Riviere suggested to Diehl and Carroll that the two of them form a new company and do their work with ABC through that separate company. The parties negotiated a document known as the Principles of Agreement which set forth the relationship to be entered into between ABC and DCA, the new company to be formed by Diehl and Carroll. The document was signed by ABC and DCA and had an effective date of November 1, 1988. After signing the Principles of Agreement, Diehl and Carroll incorporated DCA. DCA contends the Principles of Agreement sets forth the final agreement between the parties, and although ABC contends that the agreement was merely a prelude to a more formal agreement, Riviere testified at trial that he treated the Principles of Agreement as if it were a contract.

The main portion of ABC's duties concerning the Hephzibah project remained to be completed after the Principles of Agreement was signed. The document provided that DCA would be entitled to a percentage of the design fees received by ABC for projects worked on by DCA which were already in existence as of November 1, 1988, on the same schedule as the design fees were received by ABC from its clients. The Principles of Agreement also provided that should the parties terminate the agreement, then any work in process would be treated as if the agreement were still in force.

After November 1, 1988, DCA provided architectural services for the Hephzibah project and other ABC projects. ABC billed Hephzibah for DCA's services, and subsequent to December 1, 1988, Hephzibah paid ABC $126,140. ABC made an initial payment to DCA of a portion of the money it received from Hephzibah in the amount of $69,000, as required by the Principles of Agreement. However, in January of 1989, ABC failed to pay any further payments to DCA. During a meeting held in February of 1989, Riviere told Diehl and Carroll that ABC was having cash flow problems. Based upon this representation, DCA agreed to allow ABC to pay the balance of the design fees owed DCA at a rate of $15,000 per month. This agreement was reduced to writing and signed by the parties. On April 10, 1989, after ABC had paid two of the $15,000 installments, Riviere arranged another meeting between the parties. During this meeting, Riviere told Diehl and Carroll that he felt ABC had overpaid DCA, thus he was terminating the relationship between the corporations. ABC subsequently refused to pay DCA the balance of the design fees due from the Hephzibah project and other projects worked on by DCA. DCA filed the present action against ABC and Riviere, and the amended complaint set forth causes of action against ABC for breach of contract, open account, quantum meruit, conversion, and fraud. The amended complaint also set forth claims against Riviere for conversion and fraud.

After all evidence was presented, defendants moved for a directed verdict on all of the counts set forth in DCA's amended complaint. The trial court granted a directed verdict in favor of Riviere and granted ABC a directed verdict on the fraud claim. Thereafter, the jury found in favor of DCA and awarded DCA damages in the amount of $69,828.20 plus interest and attorney fees against ABC. DCA appeals the trial court's grant of directed verdicts to ABC and Riviere and the ruling of the trial court which effectively precluded the jury from awarding exemplary damages against ABC on DCA's conversion claim.

1. Because it appears that ABC has filed a petition for relief under the Bankruptcy Code (11 USC § 101 et seq.), further proceedings against ABC are stayed by operation of 11 USC § 362. Thus, this

court may only address those enumerations of error pertaining to Riviere. *GMAC v. Yates Motor Co.*, 159 Ga. App. 215 (2) (283 SE2d 74) (1981). That portion of the case which relates to ABC is dismissed but plaintiff/appellant retains the right to file a new appeal in regard to ABC at such time as the stay is lifted.

2. DCA first contends the trial court erred in granting a directed verdict in favor of Riviere on DCA's conversion claim. " 'Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.' . . . [Cit.]" *Winterchase Townhomes v. Koether*, 193 Ga. App. 161, 163 (3) (387 SE2d 361) (1989). Because evidence was presented at trial indicating ABC had refused to turn over to DCA a portion of the design fees received from the Hephzibah project and other projects worked on by DCA, the trial court correctly concluded that an issue of fact was presented for jury resolution as to whether this refusal constituted an exercise of control, custody or dominion by ABC over DCA's property.

The question remains, however, as to whether Riviere, as an officer and agent of ABC, could be personally liable for ABC's refusal to turn over these funds. The trial court determined Riviere could not be liable because the evidence presented at trial failed to show that Riviere personally benefited from the alleged conversion of funds. However, this ruling was incorrect because "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use. [Cit.]" (Punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987). Accord *Mitzner v. Hyman*, 175 Ga. App. 311 (1) (333 SE2d 182) (1985). Furthermore, " 'an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.' [Cit.]" *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 411 (1a) (203 SE2d 597) (1973). Thus, there is no requirement that a corporate officer personally profit from the conversion of property, only that he participate in or direct the commission of the act.

The evidence presented at trial reveals that Riviere was intimately involved in negotiating the Principles of Agreement and was therefore aware of the terms requiring ABC to pay DCA a portion of

the funds received from clients; that Riviere remained in constant contact with DCA regarding the projects worked on by DCA and administered the funds collected from the Hephzibah project and other projects worked on by DCA; that Riviere arranged and presided over the meetings between the principals of ABC and DCA during which discussions concerning the money owed DCA took place; that Riviere was the individual at ABC who decided to terminate ABC's relationship with DCA; and that Riviere was the individual who determined ABC would not make any further payments to DCA. Thus, sufficient evidence was presented from which a jury could determine that Riviere participated in or specifically directed the alleged conversion of funds by ABC. "A verdict should not be directed unless there is no genuine issue of material fact or unless the proven facts, viewed in the light of every legal theory possible in a given fact pattern, can sustain no other finding. [Cits.]" *Mansour v. McWilliams*, 172 Ga. App. 377, 378 (1) (323 SE2d 262) (1984). Consequently, the trial court erred in directing a verdict for Riviere on DCA's conversion claim.

3. DCA also contends the trial court erred in granting a directed verdict in favor of Riviere on DCA's fraud claim because sufficient evidence was presented from which a jury could have determined Riviere committed actionable fraud at the time the Principles of Agreement was executed. However, actionable fraud cannot be predicated upon promises to perform some act in the future or mere failure to perform promises made, unless such promises were made with a present intention not to perform or where the promisor knows the future event will not take place. *Dronzek v. Vaughn*, 191 Ga. App. 468 (4) (382 SE2d 188) (1989). Our review of the transcript fails to reveal any evidence from which a jury could determine Riviere, at the time the Principles of Agreement was executed, knew ABC would not perform its obligations to DCA. Thus, the trial court did not err in granting a directed verdict in this instance.

DCA further argues that Riviere committed actionable fraud when he convinced DCA to accept an installment payment arrangement in February of 1989 based upon misrepresentations that ABC was experiencing cash flow problems. However, in order for an action for fraudulent misrepresentation to lie against Riviere, proof must have been presented at trial: (1) that Riviere made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving DCA; (4) that DCA relied upon such representations; and (5) that DCA sustained loss and damage as the proximate result of the representations having been made. See *Ekstedt v. Charter Med. Corp.*, 192 Ga. App. 248 (1) (384 SE2d 276) (1989). Our review of the transcript fails to reveal any evidence showing DCA sustained loss or damage as a result of its reliance on Riviere's alleged misrepresentation that ABC was suffering

cash flow problems. Because the fifth element necessary to prove a cause of action for fraud was not established, the trial court did not err in granting a directed verdict in favor of Riviere on DCA's claim for fraud.

*Judgment of directed verdict in favor of appellee A. Milton Riviere affirmed in part and reversed in part; appeal of judgment relating to appellee American Building Consultants, Inc., dismissed with instructions. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 12, 1992 —
RECONSIDERATION DENIED APRIL 1, 1992 — 

*Land, McKnight, Newlin & Cohen, Robert H. McKnight, Jr., G. Marshall Kent, Jr.*, for appellant.
*Pruitt & Britt, Walter M. Britt*, for appellees.