S04Q2099. GENERAL ELECTRIC COMPANY v. LOWE'S HOME CENTERS, INC.
(608 SE2d 636)

FLETCHER, Chief Justice.

The first question certified by the Eleventh Circuit in this case is whether Georgia's economic loss rule allows a plaintiff to recover in tort lost profits that would have only been realized by using its damaged property *and* other damaged property that it did not own.[1] We hold that established Georgia law and policy considerations dictate that a plaintiff may only recover lost profits associated with damage to its own property. Because we answer this question in the negative, we need not answer the second certified question.[2]

Lowe's Home Centers, Inc. operated a retail store on a 5.8-acre parcel of land in Rome, Georgia until 1998. During the 1990s, Lowe's sought to replace the retail store with a much larger "superstore," which would also require the acquisition of adjacent property. Lowe's therefore entered into an agreement with a developer, Horne Properties, under which Horne would buy adjacent property and lease it

---

[35] *Hudson,* 250 Ga. at 486.

[1] *Lowe's Home Centers v. General Electric Co.,* 381 F3d 1091 (11th Cir. 2004).

[2] The second certified question asks whether lost profits associated with an unopened store that is part of a national chain are too speculative to permit recovery. Because of our answer to the first question, this question is moot.

to Lowe's. All of the relevant property is located near a General Electric Company plant where polychlorinated biphenyls (PCBs) were used. After PCBs were discovered on the first parcel of adjacent property sought by Horne, Lowe's and Horne canceled their agreements with respect to this property. Lowe's and Horne then entered into a second agreement for a different, eight-acre adjacent parcel that is the subject of this case. After testing revealed PCBs on this property and on Lowe's existing property, Horne and Lowe's canceled their agreements for the second parcel, which was permitted by the contractual terms.

Lowe's then filed suit against GE in the United States District Court for the Northern District of Georgia alleging trespass, nuisance, negligence, and negligence per se in addition to federal environmental claims. The jury awarded Lowe's $18 million in lost profits associated with the planned superstore; $2 million for the reduction of rental value of Lowe's existing property; and $163,581 for Lowe's costs of investigating and responding to the contamination. On appeal, the Eleventh Circuit certified to this Court the two questions discussed earlier — in short, whether the "economic loss rule" or the "new business rule" barred Lowe's from recovering lost profits associated with its planned superstore.

1. The "economic loss rule" generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort.[3] Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property; a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another.[4] Lowe's argues that because it planned to use both its property and the unowned property for a single enterprise, lost profits associated with the combined property are recoverable even under the economic loss rule. GE, on the other hand, argues that Georgia law only permits recovery for damage to the property that Lowe's actually owned. For the following reasons, GE is correct.

---

[3] See generally Eddward P. Ballinger, Jr. and Samuel A. Thumma, *The History, Evolution, and Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L. J. 491, 491-494 (discussing the economic loss rule generally and its role at the intersection of tort and contract law).

[4] *Byrd v. English*, 117 Ga. 191 (43 SE 419) (1903); *Vulcan Materials Co. v. Driltech*, 251 Ga. 383, 387-388 (306 SE2d 253) (1983) (damages for economic loss associated with defective product recoverable in tort only if there is personal injury or damage to property other than the defective product itself); see also Restatement (Second) of Torts § 929 (1) (b) (damages for past invasion of land causing harm, but not total destruction, include compensation for loss of use of the land); *McDonough Equip. Corp. v. Sunset Amoco West*, 669 So2d 300 (Fla. 1996) (economic loss rule prohibits recovery in tort for costs of cleaning underground water contamination where contract dealt with the same).

Existing case law makes clear that parties can recover in tort only for damage to their own property under the economic loss rule. In *Byrd v. English*, this Court denied recovery to a customer of Georgia Electric Light Company who lost power when the defendants damaged power conduits on third party property.[5] This Court stated that:

> If the plaintiff can recover of these defendants upon this cause of action, then a customer of his, who was injured by the delay occasioned by the stopping of his work, could also recover from them; and one who had been damaged through his delay could in turn hold them liable; and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits. To state such a proposition is to demonstrate its absurdity.[6]

The United States Supreme Court cited *Byrd* in *Robins Dry Dock & Repair Co. v. Flint*.[7] Decisions from other jurisdictions have held likewise.[8]

Lowe's attempts to conflate the damage to both properties by showing that it planned to use both for a single enterprise. In doing so, it seeks to make this a "hybrid" case to which existing case law does not neatly apply. But in fact existing case law does neatly apply — it provides that Lowe's can recover for damage to its own property and that the owner of the other property can recover for damage to its property.

Established Georgia law is clear that an "option to purchase land does not, before acceptance, vest in the holder of the option any interest, legal or equitable, in the land which is the subject of the option."[9] Lowe's had even less than an option in the adjacent property — it had a lease agreement with Horne, and Horne had the option. As noted earlier, both Lowe's and Horne were contractually permitted to cancel their agreements in the event of contamination, and both did so. Therefore, it is clear that Lowe's did not have a sufficient property

---

[5] 117 Ga. at 193-194.

[6] Id.

[7] 275 U. S. 303, 309 (48 SC 134, 72 LE 290) (1927) (stating that "a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other. . . . The law does not spread its protection so far.").

[8] See, e.g., *Edens & Avant Investment Properties v. Amerada Hess Corp.*, 456 SE2d 406 (S.C. Ct. App. 1995) (involving facts very similar to the present case); *State of Louisiana v. M/V Testbank*, 752 F2d 1019 (5th Cir. 1985), cert. denied, 477 U. S. 903 (106 SC 3271, 91 LE2d 562) (1986).

[9] *Martin v. Schindley*, 264 Ga. 142, 143 (442 SE2d 239) (1994).

interest in the adjacent land to permit recovery.[10]

2. Policy considerations also favor GE's position and disfavor Lowe's position. Lowe's position would significantly expand the reach of Georgia tort law by allowing double recovery for the same wrongdoing if, for example, the current owner of the adjacent land in this case also made a claim for recovery. In addition, under Lowe's theory, nothing would prevent Horne, who had an option to purchase the adjacent property, from being the *third* party to recover from GE for its lost profits — again associated with the same damage. This new exception to the economic loss rule would also be murky and could give rise to substantial litigation. In contrast, GE's position provides the certainty of a bright-line rule, affords predictability to courts and parties alike, and avoids the unfairness to defendants that would come with duplicative liability for the same damage.[11]

Because we hold that Lowe's may not recover lost profits relating to its planned superstore under the economic loss rule, we need not address the second certified question as to whether lost profits would be prohibited by the new business rule.

*Certified questions answered. All the Justices concur.*

DECIDED FEBRUARY 7, 2005 —
RECONSIDERATION DENIED MARCH 7, 2005.

*Spriggs & Hollingsworth, Joe G. Hollingsworth, Katharine R. Latimer, Donald W. Fowler, Rebecca A. Womeldorf, William S. D. Cravens, Williams & Connolly, Steven R. Kuney*, for appellant.

*Kilpatrick Stockton, Richard A. Horder, Stephen R. Berlin, Susan H. Cooper, Laura A. Greer, Adam H. Charnes*, for appellee.

---

[10] See also *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F3d 198, 203 (5th Cir. 1995) ("Although one might try to extrapolate an argument from [*Consolidated Aluminum Corp. v. C. F. Bean Corp.*, 772 F2d 1217 (5th Cir. 1985)] that, once physical damage to any proprietary interest is proven, all pure economic losses are recoverable, such a reading, we think, is inconsistent with *Consolidated*'s holding.").

[11] See *M/V Testbank*, 752 F2d at 1029 (opining that a "bright line rule of damage to a proprietary interest" is "more candid, and in addition, by making results more predictable, serves a normative function").