67841. DORSEY v. HARRISON.

POPE, Judge.
Plaintiff-appellant Roy A. Dorsey d/b/a Dorsey-Alston Company brought this action against defendant-appellee Pegram Harrison, seeking recovery of a 6% real estate commission in the amount of

$24,000. A bench trial resulted in a verdict in favor of defendant-appellee. Plaintiff-appellant brings this appeal challenging certain of the trial court's findings of fact and conclusions of law.

The trial court's findings of fact and conclusions of law are as follows:

### Findings of Fact

1. In December of 1981 or January 1982, defendant located a house which he was interested in purchasing at No. 3 Yonah Place in Atlanta, Georgia. The house was not on the market.

2. Defendant asked his then across-the-street neighbor, Mr. Jack Glenn, for the name of the person who lived at No. 3 Yonah Place.

3. Defendant was informed that the house was owned by Mrs. Mary Close.

4. Either Mr. Jack Glenn or his wife suggested that defendant call Mr. Lewis Glenn and ask Mr. Lewis Glenn to inquire whether Mrs. Close was interested in selling the house.

5. Defendant contacted Lewis Glenn. Lewis Glenn was and is the sales manager for plaintiff, Roy A. Dorsey, d/b/a Dorsey-Alston Company. Dorsey-Alston Company is a prominent real estate firm in Atlanta. Lewis Glenn is experienced in real estate sales.

6. It is customary in the real estate business in Atlanta that the seller pays any real estate sales commission.

7. Real estate firms customarily obtain a written agreement from a seller to pay a commission.

8. While it is sometimes the case, it is not customary for a real estate firm to have a contract with a potential purchaser or to be paid a commission by a purchaser.

9. Plaintiff and defendant were and are familiar with the normal and customary practices in the real estate business in Atlanta.

10. Mr. Lewis Glenn contacted Mrs. Close, found that she had some interest in selling the house, previewed the house and arranged to show the house to defendant.

11. Mr. Lewis Glenn informed defendant that Mrs. Close had quoted a price of $450,000.00 net to her, and, with plaintiff's 6% commission on top, the price would be $477,000.00.

12. Defendant said he was interested in seeing the house.

13. Mr. Lewis Glenn arranged to show the house to defendant.

14. After defendant saw the house, Mr. Lewis Glenn informed defendant that plaintiff would expect him to pay the 6% on the sale.

15. Defendant immediately rejected plaintiff's offer, stated that he would not agree to pay any commission and took no other action which could be considered as an acceptance of plaintiff's offer or an agreement to pay a commission.

16. Defendant purchased the house at No. 3 Yonah Place for $400,000.00.

*Conclusions of Law*

1. Having heard the testimony, reviewed the documentary evidence and having considered the demeanor and credibility of the witnesses, the Court finds that the minds of the parties never met and that defendant and plaintiff never agreed at the same time, upon the same subject matter, in the same sense. *Fonda Corp. v. Southern Sprinkler Company, Inc.*, 144 Ga. App. 287, 291 (241 SE2d 256) (1977).

2. Reviewing the objective actions of the parties, the Court concludes that, at best, the statement made by Mr. Lewis Glenn concerning the purchase price of the house was ambiguous. Mr. Lewis Glenn did not tell defendant in advance that he expected defendant to pay a commission. While a written agreement is not necessary to enforce such an obligation, Mr. Lewis Glenn was sufficiently sophisticated that he could have used a writing to evidence any agreement with defendant.

3. The response by defendant to Mr. Lewis Glenn's statement about the price of the house was at best ambiguous. While plaintiff contends that defendant incurred an obligation to pay a commission through his actions, defendant's actions are equally consistent with his contention that he expected the seller to pay any commission. See *Harry Norman & Assoc., Inc. v. Bryan*, 158 Ga. App. 751, 752-53 (282 SE2d 208) (1981). The Court, therefore, concludes that the parties misunderstood each other and that no contract was ever made between the parties.

4. In light of the ambiguities of the statements and the conduct of the parties, the customs and practices in the real estate business and the fact that the burden of proof rests with the plaintiff, the Court concludes that plaintiff has failed to sustain its burden and the Court finds in favor of the defendant. Ga. Code Ann. § 20-704 (2) (now OCGA § 13-2-2).

5. While the actions taken by Mr. Lewis Glenn had some value, plaintiff specifically stipulated that it did not seek to recover for value of plaintiff's services but proceeded exclusively on an oral contract. In light of this stipulation and in the absence of any evidence of the value of those services, plaintiff cannot recover in quantum meruit.

IT IS HEREBY ORDERED, ADJUDGED that plaintiff take nothing and that judgment be entered in favor of defendant, with costs assessed against the plaintiff.

Plaintiff's enumerations of error essentially challenge the sufficiency of the evidence to support the verdict. The evidence of record in regard to the 6% real estate broker's commission shows the following. Before defendant asked Lewis Glenn (hereinafter "Glenn") to arrange a showing of the house, he had been told by Glenn that the owner wanted to net $450,000 and that there would be payable in addition a commission of 6%, which would be $27,000, and that when he saw the property he knew that plaintiff was looking for a 6% commission if he bought it. Defendant testified that although he knew plaintiff was expecting the 6% commission, he did not know it was expected from him, even though he knew of no one but himself who had asked the broker to do anything and knew of nothing the seller had asked the broker to do. He testified that he did not see that a contract to pay a commission had come into being and that there was never any possibility of a percentage commission of any kind arising in his mind because he thought first, that the law put a duty on the seller to pay a commission; second, that the practice was for sellers and not buyers to pay commissions; and third, that under the circumstances he did not think that plaintiff was the procuring cause of the sale. As to whether he learned of plaintiff's expectation of receiving a commission *after* he had seen the house, defendant first testified that until after the house was seen, Glenn had not told him about the commission but had simply said that Mrs. Close's price was $477,000 inclusive of a commission. Defendant later testified that he took no issue with the statement that on the first occasion (before the house was seen) Glenn had said that Mrs. Close wanted $450,000 net and that on top of that there would be a 6% commission payable to plaintiff which would make the total price he would have to pay $477,000. Defendant further testified that he then asked Glenn to make arrangements for his wife and him to view the property. In answer to a question of whether after they had seen it Glenn said anything substantially different, defendant testified: "[H]e never said anything about a commission being payable . . . by me. . . . The idea of my paying the commission separately and distinctly occurred after we had seen the house. . . . After we had seen the house, then he clarified to me, or I understood him to be saying to me that Mrs. Close was not going to pay a commission, that I would have to pay a commission, and that commission would be X number of dollars on top of the purchase price, whatever that might be, and that I would have to pay it directly to them. It was at that point I said: . . . 'I have a problem with the commission. That won't work.'" As to why defendant had not mentioned his problem with the proposed commission on the first occasion, he testified that that set of facts had not been presented to him. But as to whom he thought would be paying the $477,000 Glenn mentioned on that first occasion, defendant testified

that it never occurred to him that anybody would ever pay that amount but that if that amount were paid — the commission and the purchase price — he suspected the seller would pay the commission to the broker; as to whom would pay the seller, he named the buyer. When asked whether it made any difference whether the price is increased by the commission and the commission is shown on the closing statement as a disbursement on behalf of the seller or the price is without the commission and the commission is paid directly by the purchaser, defendant testified: "It does if the commission is added onto an amount agreed to as the total amount that a buyer was willing to pay. I was willing to pay X number of dollars, not X plus six percent." He stated further that it was essentially correct that he would not have been willing under any circumstances to pay more than $400,000. Nevertheless, defendant then asked Glenn to procure and deliver to him plans for the property and this was done.

On January 20, 1982 defendant wrote a letter to Mr. and Mrs. Close (copied to Glenn and Roy Dorsey) in which he offered to purchase the property at No. 3 Yonah Place for $395,000. The letter continued: "As to Dorsey-Alston's commission; my understanding is that you have not listed the property, nor agreed to pay a commission. I did ask Lewis Glenn to approach you on my behalf, but I have no agreement with him or Dorsey-Alston concerning a commission or fee. I believe that a 6% commission is only justified where it is both agreed to and earned by efforts to sell. In this situation, I have sought to buy; and you have not sought to sell. If you and I reach agreement, I will be glad to pay Dorsey-Alston a fee of $5,000 for their services to me in expressing my interest." Finally, in the sales contract between defendant and Mrs. Close, defendant agreed to indemnify her "against any claim made by Dorsey-Alston with respect to this Contract."

From the foregoing evidence of record, we conclude that notwithstanding defendant's initial testimony that nothing was said about a commission when Glenn reported by telephone that the owner was interested in selling, his later testimony indicated that from that time on he knew that the owner wanted to net $450,000; that plaintiff expected a 6% commission if the sale were made; and that he and not the seller had requested services of the broker. Furthermore, however a sale is structured, the result is the same to the purchaser if the net price to the seller is increased by the commission and the closing statement shows the seller as paying the commission or if the seller receives only the net price from the purchaser and the purchaser pays the broker directly. Only one who is completely naive and inexperienced would under the circumstances in this case have been in any doubt regarding who was to pay the commission if a sale resulted, and defendant, a Harvard Law School graduate, is neither.

On the basis of this evidence the trial court concluded that the minds of the parties never met and that they never agreed at the same time, upon the same subject matter, in the same sense. In our view, this conclusion was erroneous and the evidence does not support it. All of the services performed by plaintiff were performed at defendant's request. He contacted Glenn; Glenn did not contact him. Defendant admitted that he expected to pay for the services and that the $5,000 he offered constituted payment and not a gratuity. The only payment ever suggested by plaintiff was a 6% commission if a sale resulted. Defendant knew what plaintiff expected when he asked Glenn to arrange for him and his wife to see the house. Without questioning this basis of compensation, he inspected the house and after inspecting it said he had a problem with the commission but still did not refuse to pay it. Instead, plaintiff was asked to perform additional services which were accepted. Under these facts, the conclusion that there was no agreement between the parties cannot stand. "[P]arties may be as fully bound by an implied as by an express contract 'where the intentions of the parties are not expressed, but an agreement in fact creating an obligation is implied or presumed from their act.'" *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 414 (203 SE2d 597) (1973). See also *Erwin v. Wender*, 78 Ga. App. 94 (50 SE2d 244) (1948). Therefore, plaintiff is entitled to a new trial.

*Judgment reversed. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 13, 1984 —
REHEARING DENIED JULY 26, 1984 —

*Paul H. Anderson, Jr.*, for appellant.
*John A. Chandler*, for appellee.