**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 19, 2018**

# In the Court of Appeals of Georgia

A18A1305. D. J. POWERS COMPANY, INC. v. PEACHTREE
     PLAYTHINGS, INC.

BARNES, Presiding Judge.

Peachtree Playthings, Inc., an importer of organic sugar from Brazil, retained

D. J. Powers Company, Inc. to act as its customs broker to file entry documents with

the U. S. Customs and Border Protection ("CBP"). After several filings submitted to

the CBP failed to include requisite sugar certificate information, thus resulting in

additional duties being assessed, Peachtree Playthings (hereinafter, the "Sugar

Importer") sued D. J. Powers Company (hereinafter, the "Customs Broker") for gross

negligence, punitive damages, and attorney fees. The Customs Broker sought, but was

denied, summary judgment. Because the record reveals that the Customs Broker was

entitled to summary judgment on all claims pursued, we reverse.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review the denial of summary judgment de novo, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Norton v. Budget Rent A Car System*, 307 Ga. App. 501, 501 (705 SE2d 305) (2010). So viewed the record shows the following.

*The Process of Importing Organic Sugar*

Importing organic sugar into the United States, as the Customs Broker's President and CEO described, is a two-step process. First, upon arrival at a United States port, the sugar is "entered" into a bonded warehouse; second, the sugar is withdrawn from the warehouse and thereby "entered" into the United States' commerce. At both steps, an importer of such product is required to file an "entry" form with the CBP. Any import duties that are owed must be paid at the time of the withdrawal entry.

It is undisputed that the organic sugar constitutes a "specialty sugar," and as such, is subject to a tariff-rate quota. Accordingly, a limited amount ("quota" amount)

2

of specialty sugar may be imported at a lower duty rate, while all amounts above that limit are charged at a higher rate. The quota amount is admitted only during designated intervals ("tranches"), which are filled on a "first come, first served" basis. To receive the lower duty rate, importers hold their sugar in bonded warehouses and wait until a tranche opens to enter their product into the United States' commerce.

When applying for a tranche entry, an importer of specialty sugar is required to show CBP that its sugar product qualifies as "specialty sugar." The importer does this by presenting to CBP a copy of its "sugar certificate,"[1] a letter issued by the U.S. Department of Agriculture certifying that the sugar has been tested and meets certain qualifications. It is undisputed that the Sugar Importer obtained a sugar certificate for its product.[2]

*The Customs Broker's Services to the Sugar Importer*

---

[1] It is undisputed that starting in 2013, CBP issued bulletins (which were made available to the Customs Broker and other participants of the relevant industry) of the date upon which certain filings would be required to include such certificates, else the filing would be rejected, and the importer would "risk the quota being closed."

[2] The certificate reiterated that a copy of the certificate must be presented to CBP when the specialty sugar enters the United States Customs Territory and that "entry of specialty sugar [is] on a first-come, first-served basis until each specialty sugar tranche has been fully subscribed."

3

To navigate the tasks of filing, among other things, withdrawal entries for its organic sugar before the lower duty tranches filled,[3] the Sugar Importer engaged the Customs Broker.[4] To that end,[5] in March 2014, the Sugar Importer executed a "US Customs Power of Attorney" ("POA") appointing the Customs Broker to "act for and on behalf as a true and lawful agent and attorney" of the Sugar Importer to, among other things, "make, endorse, sign, declare or swear to any Customs entry, withdrawal, declaration, certificate, bill of lading, carnet, security filing or any other documents required by law or regulation in connection with the importation, exportation, or transportation[ ] of any merchandise. . . ." The POA expressly incorporated "Terms and Conditions of Service," a separate document setting forth clauses that pertained to matters such as insurance, governing law, record-keeping, and the Customs Broker's limited liability. Subsequently, the Sugar Importer also

---

[3] As the Sugar Importer's counsel acknowledged at the summary judgment hearing, "The reason [the Sugar Importer] engaged the expert, [the Customs Broker], . . . is so that they would fall within the tranche and save [money] by having the lower duty."

[4] The Customs Broker cites *United States v. Yip*, 930 F2d 142, 143-144 (2d Cir. 1991), as providing a brief explanation of customs brokerage services.

[5] Before a customs broker is allowed to transact customs business in the name of its principal, the broker "is required to obtain a valid power of attorney to do so." 19 CFR 141.46.

provided to the Customs Broker a copy of its sugar certificate, which stated that the Sugar Importer was permitted to enter its product at the lower tariff rate on specified dates, the last of which was the tranche date at issue here, July 10, 2015.

Thereafter, as a Customs Broker's employee assigned to work on the Sugar Importer's account recalled, the Sugar Importer's sugar was "warehoused and withdrawn as possible, as allowed by the quota openings." Elaborating on the latter, the employee explained that to qualify for such an opening, any withdrawal entry needed to have been filed with CBP within a narrow time window.

Upon receiving instructions from the Sugar Importer, the Customs Broker successfully filed with CBP entries, including quota withdrawal entries. But on July 10, 2015, all five quota withdrawal entries submitted by the Customs Broker were rejected because, as CBP notated back to the Customs Broker, the "sugar certificate information was not properly transmitted." Specifically, the Customs Broker had neither provided a copy of the Sugar Importer's sugar certificate to CBP, nor included the sugar certificate number on the withdrawal entries submitted to CBP. By the time the Customs Broker – which, according to its president and CEO, was experienced with raw sugar, but not with speciality sugar prior to its engagement with the Sugar Importer – ascertained the crux of the problem and submitted corrected forms with

the requisite sugar certificate (information),[6] the tranche had closed. The Sugar Importer's product could be withdrawn immediately only at the higher duty rate. Given the Sugar Importer's forecast of the needs of its own customer, Costco, the Sugar Importer elected to pay the additional duties of $108,891.34.

*Underlying Litigation*

To recover the additional duties paid, the Sugar Importer sued the Customs Broker on a single substantive theory of gross negligence alleging,

> [The Customs Broker] had a duty to provide reasonably competent Customs brokerage services to [the Sugar Importer], and to reasonably ensure that [the Customs Broker's] actions were in compliance with Customs rules, directives, and practices. . . . [The Customs Broker] breached its duty to [the Sugar Importer] by failing to exercise even slight diligence in filing the Withdrawals. . . . As a direct and proximate result of [the Customs Broker's] gross negligence, [the Sugar Importer] incurred additional duty liability.[7]

The Sugar Importer alleged additional claims for punitive damages and attorney fees.

---

[6] The record shows that the Customs Broker had previously filed specialty sugar entries on behalf of the Sugar Importer without including the sugar certificate, but CBP personnel, who apparently had the sugar certificate number, chose to handwrite the missing information on the submitted forms.

[7] For purposes of its complaint, the Sugar Importer designated "U. S. Customs and Border Protection" as "Customs."

After discovery, the Customs Broker filed a summary judgment motion. It recited the Sugar Importer's allegation that "[the Customs Broker] had a duty to provide reasonably competent Customs brokerage services to [the Sugar Importer]." The Customs Broker posited that the duty to provide customs brokerage services had been bargained for between the parties and memorialized pursuant to the POA.[8] It therefore asserted that the duty that it allegedly breached arose directly from, and not independent of, the parties' contract.

Given the premise that a contract underlay each of the five CBP filings complained of in this case, the Customs Broker went on to argue that the Sugar Importer could not recover under a tort claim without a showing that an independent duty had also been breached. The Customs Broker further argued that, because the claimed losses were purely economic, the Sugar Importer's tort claim was barred by the economic loss rule. The Customs Broker attacked the punitive damages claim as

---

[8] See 19 CFR 111.1 (defining "customs broker" as "a person who is licensed . . . to transact customs business on behalf of others"; defining "person" as "includ[ing] individuals, partnerships, associations, and corporations"; and defining "customs business" as "includ[ing] the preparation, and activities relating to the preparation, of documents in any format and the electronic transmission of documents and parts of documents intended to be filed with CBP in furtherance of any other customs business activity"). There is no dispute that, at all times relevant, the Customs Broker was a licensed customs broker for purposes of 19 CFR 111.1.

improper on grounds that there was no entitlement to compensatory damages,[9] and that there was no allegation of malice, fraud, or willful misconduct.[10] The Customs Broker attacked the attorney fees claim as improper on grounds that such ancillary claim thus had no supporting substantive claim and that, at any rate, the Sugar Importer had failed to identify a statutory basis for such an award.

Alternatively, the Customs Broker argued that to the extent it could be held liable, its liability was capped at $250 by limitation of liability clauses set forth in the Terms and Conditions of Service document.[11]

---

[9] "A claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach. Punitive damages may not be recovered where there is no entitlement to compensatory damages." (Citation and punctuation omitted.) *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992).

[10] "Negligence alone, even gross negligence, is insufficient to support punitive damages." *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 173 (4) (537 SE2d 356) (2000); see also *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (2) (526 SE2d 82) (1999) (same).

[11] The Customs Broker pointed to the Terms and Conditions of Service document, which provided that its "liability shall be limited to the following: . . . [W]here the claim arises from activities relating to 'Customs business,' $50 per entry or the amount of brokerage fees paid to [the Customs Broker] for the entry whichever is less." The Customs Broker pointed also to language therein that "in no event shall [the Customs Broker] be liable or responsible for consequential, indirect, incidental, statutory, or punitive damages, even if it has been put on notice of the possibility of such damages."

8

Opposing the summary judgment motion, the Sugar Importer posited that the POA and Terms and Conditions of Service document "could not form the basis of a breach of contract claim" for reason that they authorized, but did not obligate, the Customs Broker to do any act on its behalf. In particular, the Sugar Importer asserted that neither document specified what to file, when to file, where to file, or how to file. Moreover, the Sugar Importer claimed that the Customs Broker owed it duties as its agent.[12] Hence, the Sugar Importer claimed that its gross negligence claim was permissible and not barred by the economic loss rule. The Sugar Importer further contended that a finding of gross negligence would render the cited limitation of liability clauses void as violative of Georgia's public policy that "exculpatory clauses do not relieve a party from liability for acts of gross negligence or wilful or wanton conduct." (Footnotes omitted.) *Colonial Properties Realty v. Lowder Constr.*, 256 Ga. App. 106, 112 (5) (567 SE2d 389) (2002). The Sugar Importer thus asserted that its

The Customs Broker cited its charge of $135 per entry, and that there were five entries complained of. Hence, as the Customs Broker calculated, its liability, if any, was capped at $250.

[12] The Sugar Importer also asserted that, because the Customs Broker provided its "skilled services" relating to the import business, the (separate) duty underlying professional negligence actions applied.

9

ancillary claims for punitive damages and attorney fees were proper, and identified OCGA §§ 13-6-11 and 51-12-7 as the statutory bases for the latter.

The trial court convened a hearing. Counsel for the Customs Broker recapped that the Sugar Importer had alleged a single substantive theory of gross negligence, adding that such theory was likely selected to avoid the liability-limitation clauses; that nevertheless, this is "purely a case of a contractual dispute between parties that agreed on a service"; that therefore, to prevail on a tort theory, a duty – independent of the contractual duty – must be shown; and that the Sugar Importer had failed to make that showing. The Customs Broker's counsel summarized, "[This is] a contractual case, and it should be litigated as such. However, [the Sugar Importer] has not filed any cause of action for breach of contract. Therefore, we would ask the [c]ourt for summary judgment[.]"

The trial court summarily denied the summary judgment motion. And the Customs Broker procured interlocutory review of that ruling.

1. The Customs Broker contends that the trial court erred in rejecting its defense that the economic loss rule barred the tort claim pursued by the Sugar Importer; the Customs Broker maintains that the duty which the Sugar Importer alleges that it breached arose directly from, and not independent of, the contract

10

entered into between the parties, and that the contract was for it to provide CBP brokerage services.[13] We agree.

"The purpose of the economic loss rule is to distinguish between those actions cognizable in tort and those that may be brought only in contract." (Citation and punctuation omitted.) *ASC Constr. Equip. USA v. City Commercial Real Estate*, 303 Ga. App. 309, 316 (3) (693 SE2d 559) (2010). "The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Centers,* 279 Ga. 77, 78 (1) (608 SE2d 636) (2005). "Economic loss" includes "damages for . . . the consequent loss of profits, unaccompanied by any claim of personal injury or damage to other property."[14] *Home Depot U. S. A. v. Wabash Natl. Corp.*, 314 Ga. App. 360,

---

[13] The Customs Broker further cites as related principles: "[M]ere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." (Footnotes omitted.) *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 754 (2) (556 SE2d 517) (2001); see *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973) ("[A]n action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty – the duty must arise independent of contract to constitute a tort.").

[14] See footnote 3, supra. Additionally, the Sugar Importer has made no claim of personal injury and no claim of damage to property.

11

366 (2) (724 SE2d 53) (2012). "Courts have relegated those who suffer such economic loss to the remedies of contract law." (Citation and punctuation omitted.) Id.

As an initial matter, we note that the Sugar Importer argued below that it had no contract with the Customs Broker. And on appeal, the Sugar Importer maintains that no contract existed for reasons that the POA, together with the incorporated Terms and Conditions of Service document, neither discussed the specific services to be rendered, the scope of those services, or the standard by which they would be performed; nor did the documents specify what to file, when to file, where to file, or how to file. The Sugar Importer's argument, however, is unavailing.

OCGA § 13-3-1 provides, "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." And OCGA § 13-3-2 provides in relevant part, "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract."

The question presented here is whether the evidence showed that the parties assented to the essential terms[.][15]

The Sugar Importer's corporate representative recounted during his deposition that the Customs Broker had advertised itself as a licensed customs broker and that, after negotiations, the Sugar Importer accepted the Customs Broker's offer to provide its services for importing the organic sugar from Brazil. To facilitate their agreement, the Sugar Importer executed the POA appointing the Customs Broker to "act for and on behalf as a true and lawful agent and attorney" of the Sugar Importer to, among other things, make "any Customs entry, withdrawal, . . . or any other documents" in compliance with CBP's requirements. Thereafter, upon demand by the Sugar Importer, the Customs Broker made requisite filings for the importation of the sugar in exchange for a fee.[16] We agree with the Customs Broker that, underlying each of the five withdrawal entries at issue here, was an enforceable contract that was

[15] We discern no question presented as to whether the parties were both able to contract, whether consideration supported the parties' transactions, or whether the provision of customs brokerage services is a subject matter upon which a contract can operate.

[16] The Customs Broker's President and CEO deposed, "We comply with the rules under which we are licensed. And our licensing requires us to operate in a certain manner, and we comply with those requirements under [CBP] regulations regarding operations of imports by a broker."

facilitated and governed by the POA and the referenced Terms and Conditions of Service document. We find no merit in the Sugar Importer's broad claim that the parties had not assented to essential terms.[17]

Because the Sugar Importer was thus in a contractual relationship with the Customs Broker, because the Sugar Importer's sole substantive claim alleged the breach of contractual duties (to properly file the quota withdrawal entries), and because the damages being sought were for purely economic losses, the economic loss rule relegated the Sugar Importer to remedies of contract law. See *Gen. Elec. Co.*, 279 Ga. 77 (applying economic loss rule to preclude suit for lost profits, where land development contract for business expansion was cancelled due to alleged contamination by defendant of adjacent non-owned property needed for expansion); *J. Kinson Cook of Ga. v. Heery/Mitchell*, 284 Ga. App. 552, 555-556 (a) (644 SE2d 440) (2007) (applying economic loss rule to preclude tort claim to recover increased

---

[17] See generally *Dorsey v. Harrison*, 171 Ga. App. 774, 779 (320 SE2d 881) (1984) ("Parties may be as fully bound by an implied as by an express contract where the intentions of the parties are not expressed, but an agreement in fact creating an obligation is implied or presumed from their act.") (citations and punctuation omitted).

costs, which claim was based upon agent's alleged negligent supervision).[18] Consequently, the Sugar Importer's tort claim of gross negligence was not viable, and the Customs Broker was entitled to summary judgment on that cause of action.

2. Because the sole substantive claim of gross negligence was not viable, the Customs Broker was entitled to summary judgment also on the Sugar Importer's ancillary claims for punitive damages and attorney fees. See *J. Kinson Cook of Ga.*, 284 Ga. App. at (g).

3. In light of Divisions 1 and 2, supra, the Customs Broker's arguments that its liability, if any, is limited by clauses within the Terms and Conditions of Service document are thus rendered moot.

*Judgment reversed. McMillian and Reese, JJ., concur.*

---

[18] Furthermore, the Sugar Importer has misplaced reliance upon the duty applicable in professional negligence actions: "The law imposes upon persons performing *professional* services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances." (Citations and punctuation omitted; emphasis in original.) *Hewitt v. Walker*, 226 Ga. App. 764, 764 (487 SE2d 603) (1997). The Sugar Importer has made no argument that any Customs Broker personnel fell within the limited scope of "persons performing *professional* services"; and without that requisite showing, the Customs Broker is not chargeable with the (separate) duty applicable in professional negligence actions. See id. at 765.